UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | CRIMINAL ACTION |
| V. ) | NO. 4:04CR40030 |
| ) | |
| JOSE OTERO ) | |

DEFENDANT'S SENTENCING MEMORANDUM

The defendant submits this memorandum and an Aid to Disposition by Dr. Robert A. Joss to assist the court in fashioning a sentence sufficient, but not greater than necessary, to achieve the purposes of 18 U.S.C. sec. 3553, in light of United States v. Booker, 125 S.Ct. 738 (2005). The defendant now faces a 10 year mandatory sentence. Because he is charged with possessing crack, and because of his career offender status, he is facing a guideline range of 21.83 to 27.25 years under the sentencing guidelines. However, because of the circumstances of this case, and his background, Otero requests that the court impose a non-guideline sentence of 15 years. This time period would be the approximate sentence if Otero were not a career offender, or if the controlled substance had been powder cocaine instead of crack. Most importantly though, 15 years would achieve the purposes of 18 U.S.C. 3553 without being unnecessarily harsh.

CAREER OFFENDER

Without a doubt, Otero fits within the definition of career offender. However, as discussed below, Otero, and this offense, do not seem to be the type of defendant, or crime, that USSG sec. 4B1.1 was designed to address. Without the career offender classification, the base offense level would be 30 instead of 34. With a criminal history category of 6, the guideline range would be 14 to 17.5 years, undoubtedly sufficient time to achieve the purposes of 18 U.S.C. sec. 3553.

CRACK/POWDER

The court should also consider the sentencing disparity between crack and powder cocaine. (A sentencing judge may consider the nature of the contraband in fashioning a sentence. <u>United States v. Pho</u>, 433 F.3d 53 (1st Cir. 2006) ). If Otero had 42.97 grams of powder, as opposed to crack, his guideline exposure, as a career offender with a prior offense, would have been 15.66 to 19.58 years. To carry this argument one step further, even if Otero had 429.70 grams of powder (assuming a 10:1 ratio) 15.66 to 19.58 years would still be his guideline exposure.

In any event, 21.83 to 27.25 years seems excessive for 42.97 grams of anything.

NATURE AND CIRCUMSTANCES OF THE OFFENSE

Possession of 42.97 grams of crack cocaine with the intent to distribute is a serious offense. However, in mitigation, considering Otero's drug habit, it is a safe assumption that he himself was going to use a large portion of that crack.

Finally, although this point is not dispositive, the court should be aware of the fact that if this case had remained in the state court where it began, Otero would be facing 5-20 years with a mandatory 5. M.G.L. c. 94C sec. 32E.

HISTORY AND CHARACTERISTICS OF THE DEFENDANT

Otero's childhood was a nightmare of physical, psychological and sexual abuse. In light of this abuse, it is not surprising that he turned to drugs and alcohol at a very young age. Abusing drugs at the age which Otero did, is an indication that he was doing so to ease the pain from the abuse, not just to get high.

Furthermore, considering his lack of skills, it is no surprise that he sold drugs in order to obtain them for his own use. His history shows that he is a low volume, subsistence, street dealer – the lowest on the distribution chain. Clearly, he never amassed any assets as a result of his dealing. The fact that his prior offenses resulted from his need to feed his addiction

weighs in favor of a nonguideline sentence because if he can overcome his addiction, his need to deal will no longer exist.

Otero's criminal record is certainly nothing to be proud of, but there are several things about that record that weigh in favor of a nonguideline sentence. First, the longest sentence that he has ever received for any one offense has been two years. In addition, he has never served time in state prison because none of his cases have ever made it to superior court. Furthermore, he has never been convicted of a crime of violence nor of a firearm offense, nor has he ever been a member a gang. Finally, most of his convictions are for drug offenses, and those that are not, can be directly traced to his abuse of drugs.

Otero has never received the intensive drug and psychological treatment that he desperately needs. With the resources available in the Bureau of Prisons, he will be able to receive this type treatment and 15 years is sufficient time to complete whatever programs are available.

Finally, the defendant requests that the court credit him with the time that he spent in state custody on this case, October 7, 2004 to December 30, 2004.

## CONCLUSION

A guideline sentence is not necessary to achieve the goals of 18 U.S.C. sec. 3553 because even though Otero is a career offender, that status overrepresents his risk of recidivism, if he receives drug treatment. A sentence of 15 years will achieve the statute's goals and give the defendant a measure of hope of being released before he turns 50 years old, which along with treatment and education, will provide the best chance for him to lead a productive life upon his release.

For the defendant,

/s/ Edward L. Hayden
EDWARD L. HAYDEN
7 Franklin Street
Lynn MA 01902
(781) 599-1190
BBO #226430



**PCS**
PSYCHOLOGICAL
CONSULTING
SERVICES
INCORPORATED

ONE SALEM GREEN
SALEM, MA 01970

978 740-3100
FAX 978-740-5656

WWW.PCSFORENSIC.COM

E-MAIL
INFO@PCSFORENSIC.COM

ROBERT H. JOSS, PH.D.
FREDERIC KRELL, PH.D.
MARK S. SCHAEFER, PH.D.
CHRISTINE SCHNYDER PIERCE, PH.D.
AND ASSOCIATES

## AID TO DISPOSITION EVALUATION

**REGARDING:** Jose Otero

**DATE OF BIRTH:** October 25, 1971

**DATE OF REPORT:** May 24, 2006

**DOCKET NO.:** United States District Court: 04-CR-40030

FILED
IN CLERK'S OFFICE

2006 JUN -2 P 12: 06

U.S. DISTRICT COURT
DISTRICT OF MASS.

### IDENTIFYING INFORMATION

Mr. Jose Otero is 34-year-old, Hispanic male who is before the United States District Court of Massachusetts named with an indictment on December 15, 2004 charging Possession of Five or More Grams of Cocaine Base with Intent to Distribute in violation of 21 U.S.C. ~ 841(a)(1). The indictment also contained a forfeiture allegation pursuant to 18 U.S.C. ~ 853 ~ and noted some additional factors indicated that the offense involved at least 35 grams of cocaine base as outlined in U.S.G. ~ 2D1.1(5) and identifying the defendant as a career offender as defined by U.S.G. ~ 4B1.1. There are no co-defendants named in the charges, and Mr. Otero pled guilty on November 10, 2005 to one count of the indictment. In addition to the federal charges, Mr. Otero is charged in the Commonwealth with Possession with Intent to Distribute, Use without Authority and Driving with a Suspended License. Reportedly the Massachusetts State Police Crime Laboratory identified the substances found on Mr. Otero to be 42.97 grams of cocaine together with $1141 in cash in his pocket. Mr. Otero is represented by Attorney Edward Hayden who has requested an evaluation of Mr. Otero in aid to disposition.

### INFORMED CONSENT FOR EVALUATION

At the outset of my interview with Mr. Otero on July 15, 2005 and again at the second interview with him on April 12, 2006 I explained to him that I am a forensic psychologist requested by Attorney Hayden to evaluate him. I indicated that anything he told me could be shared with Attorney Hayden and that, if Attorney Hayden were to request it, it could become part of a report to the court or part of my testimony in court. I indicated as well that this would also refer to any collateral documents that I was able to obtain. I explained that he did not have to speak with me and could selectively decline to answer questions or could end the interview at any time.

SPECIALIZING IN
FORENSIC, MEDIATION
AND CLINICAL SERVICES

Upon inquiry, Mr. Otero appeared to understand the reason for the evaluation and the limitations of confidentiality attaching to it. Although Mr. Otero's first language is Spanish, he appeared to be able to communicate adequately in English, although from time to time I did have to repeat some questions with simpler language. Based upon his responses to my questions throughout the evaluation, it is my opinion that Mr. Otero's participation was done knowingly, willingly and voluntarily.

## SOURCES OF INFORMATION

In addition to interviews with Mr. Otero on July 15, 2005 for approximately two hours and on April 12, 2006 for approximately an hour and a half, I reviewed the following documents:

1. United States District Court Sentence Report authored by Jennifer D. Sinclair, Senior U.S. Probation Officer
2. Records from UMass Correctional Health Services regarding Mr. Otero while at MCI-Cedar Junction, these records include medical, dental and psychiatric services
3. Records from Medical Services at Worcester County House of Correction for October 8, 2004
4. Medical records, Community Health Link for contact in December, 1998
5. Record of Mr. Otero's contacts with Massachusetts Courts as of January 4, 2005
6. Worcester Police Department Incident Report, dated October 7, 2004
7. Laboratory Analysis of drugs seized, dated November 30, 2004
8. Medical records, Y Detention Center
9. Spectrum Health Services records for treatment in September – October, 2002
10. University of Massachusetts Medical Center, emergency records for dates February 1, 1981; February 17, 1981; October 25, 1992; November 9, 1992 and June 30, 1995
11. Medical records from the Medical Center of Central Massachusetts for dates June 23, 1992; January 24, 1992; December 9, 1993; December 25, 1993; March 3, 1994; August 15, 1995; July 21, 1995; June 5, 1995; August 29, 1998 and August 29, 2004
12. AdCare Hospital records, admission date August 11, 2003 to August 14, 2003
13. Medical records Hahnemann Campus for Emergency Department evaluations on October 25, 1992 and November 8, 1992
14. Catholic Charities Crosier House admission October 12, 2004

Records were requested from the Worcester Public School system but not received and also from St. Vincent's Hospital (Worcester).

## MENTAL STATUS AT TIME OF EVALUATION

On the occasion of my first meeting with Mr. Otero on July 15, 2005 he presented as a man of average height, somewhat thin and appeared his stated age of 33. He also appeared oriented to person, place and time. He appeared to have a reasonable fund of knowledge and could tell me the name of the present president of the United States and the immediate past president but did not know the name of the governor. On a test of his ability to reason abstractly, he was given several proverbs including one in Spanish, which he had difficulty interpreting. He was given a simpler task of identifying similarities between a dog and a cat and a peach and a pear and he was able to state that the first pair were animals and the second food. This suggests only rudimentary abilities for abstract thinking. On a task of Serial 7's (sequential subtraction of 7 beginning at 100) he labored to perform five subtractions and did them all correctly but took a great deal of time to do it. His recall of three words presented immediately was intact, however, when asked for them five minutes later he could neither recall them nor could he recognize them when given in a list suggesting some difficulties with memory. He related to this evaluator in a cordial fashion and his responses to questions were complete without being loquacious.

When asked whether he had experienced auditory or visual hallucinations, he indicated that sometimes when he was high he had experienced auditory hallucinations but no visual hallucinations. He did indicate tactile hallucinations in connection with the use of cocaine (this is not an unusual experience for those who use cocaine heavily). He denied any olfactory or gustatory hallucinations. When asked whether he believed that thoughts were placed in his mind or taken out of his mind, he indicated that sometimes he feels like people are influencing his thinking about the time that he might get from a plea but could site no other examples of thought insertion or extraction. He denies that others can read his thoughts or that he can read the thoughts of others or that there are special messages on the television or radio that exist for him. He indicates that he is depressed and he appeared somewhat depressed as evidenced both by his rate of speech and in his appearance. He indicates that he has been taking meds for depression and that he sometimes cries for no reason. (Comments by his long term girlfriend, Caridad, indicate that sometimes when she talks to him on the phone he is tearful.) During my interview with him in July, 2005 he indicated that he was having problems sleeping and that he was dreaming about using drugs all the time and thinking about stuff that had happened to him. He reported that he typically slept only two hours per night. He reports that since he has been receiving medication his sleep is improved. He indicates that his appetite is okay and that he has gained 50 pounds since coming into the facility. He does indicate that there are times that his thoughts go too fast and it is hard to control them.

In my interview with Mr. Otero on April 12, 2006 he seemed somewhat less depressed in his presentation but other than that his mental status did not appear to change greatly.

In sum, Mr. Otero presents as a man who is depressed. The question is whether this is a situational depression (i.e. related to incarceration and potential sentencing) or whether

3

this is of longstanding duration. He appears to be of borderline intellectual ability given his vocabulary and his report of being in special education classes "all my life."

## RELEVANT HISTORY

The information in this section comes from my interview with Mr. Otero as well as from my review of records. I also had opportunity to speak with his long term girlfriend, Caridad Santiago, and she was able to confirm some of the information I received from Mr. Otero.

**Family History:** Mr. Otero is the older of two children born to Luis Otero and Anna Guerrero. He has a younger brother Ramon Guerrero. He knows nothing of his biological father. He was raised by his mother and her husband Alberto Garcia. He reports that they had eight other children from their relationship. He indicates that Mr. Garcia came into his life at the age of two. He reports that Mr. Garcia was an alcoholic and that he and Mr. Otero's mother argued a great deal. He indicates that he (Jose) got hit a lot and was frequently told he was stupid and was subjected to physical and emotional abuse. He indicates that he was frequently forced to get down on all fours and kneel on uncooked rice and hit with electrical wires and broomsticks. He reports that he began to run away from home at the age of 11 and would stay away for two to three days at a time. He indicates that the family home burned down at some point and they were sent to live in a hotel. He indicates that for a period of time they were homeless and living in Bethlehem, Pennsylvania. Mr. Otero was born in New York City and has reportedly lived in Pennsylvania and also for much of his adult life in Worcester, Massachusetts. He reports that the physical abuse in his family was so bad that the police came to the home on several occasions. He reports that he was 14 or 15 years of age when he moved to Worcester. When discussing his physical abuse by his stepfather on April 12, 2006, he indicates that he was also hit with a switch (a small, flexible tree branch) and that the school noticed that he had marks on him. He indicates that every time the state child welfare authorities would investigate his parents would move until they finally caught up with him in Worcester when he was 14 or 15 years of age and he was placed in a foster care setting with Willy McKeever.

Mr. Otero reports that he is not aware of any mental illness in his biological parents or in his stepfather. He reports that his mother would frequently send him to his grandmother's house so things could cool down. When asked whether child welfare authorities were involved with the family, he indicated that they were and that at the age of 14 he was placed in a foster home.

Mr. Otero indicates that at the age of 11 or 12 his mother and his stepfather moved to New York City to a hotel for the homeless. He indicates that he would work as a squeegee man (i.e. cleaning car windows as people stopped at stoplights) to get money. He indicates that his father took half of the money that he made and would use it to drink alcohol. He

4

reports that he ended up hiding much of the money. He was befriended by a man named Nelson who introduced him to another man who lived in a nice house which he describes as being on the last stop at Far Rockaway. He reports that the man would rent movies and pop corn and they would watch movies in the bedroom and the man would allow him to smoke marijuana. He indicates this man then began to touch him and at some point gave him fancy sneakers and asked what he would give him in return. He indicates that the man "got naked and laid on the bed and was rubbing against him and he (Mr. Otero) felt scared was afraid to leave. He reports that he never went back.

Mr. Otero has been in a long term (17 year) relationship Caridad Santiago which has produced one child, Jose Santiago, age 17. He indicates also that Ms. Santiago has other children from a prior relationship. He indicates that he was in a foster home at the time that he met Caridad and began to live with her at 16 ½ or 17. She is three years older than he.

**Educational History:** Mr. Otero indicates that he went to the eighth grade in Worcester at the Sullivan Middle School and notes that he left at the age of 16. He reports that he was in special education all of his life. He reports no residential schools, and he indicates that he frequently did not go to school. He reports that he was embarrassed because of his clothes and was sometimes having to shower at school. He reports that he would take alternate routes home because of being teased by other children and being bullied. He reports that he would try to avoid being bullied by taking circuitous routes home. He reports that he was too embarrassed to request help.

Mr. Otero indicates that he has not obtained a Graduate Equivalency Degree and that he has tried working on it but has a great deal of trouble concentrating and can't really read. He reports as a result he sometimes gets very frustrated. When asked whether he had any specialized training, he indicated that he went to Job Corp but didn't have enough schooling to make much use of the training that he could get there. He reports that around that time he started hanging with the "wrong people." Ms. Santiago reports that he did learn some mechanical skills through a work release program while he was incarcerated previously.

**Work History:** Mr. Otero indicates that he worked shining shoes when he was younger and as a squeegee man. He also indicated that he had a job at Holy Cross College washing dishes which lasted for about three months. He reports that he got this job from his foster father who had a friend who worked there. He reports that he ended that job when he started doing drugs and getting into trouble. While in prison, however, he has worked fairly consistently. He indicates that he was a tier worker while in jail previously and that presently at MCI-Cedar Junction he has a job cleaning up hazardous waste, specifically blood, feces and urine. He indicates also that he learned how to cut hair while he was in jail.

Mr. Otero indicates that the longest job he has held in the community was four to five months at McDonald's. He reports that most recently he had been on Supplemental

5

Security Income or SSDI although it was not clear to me that he was able to understand this. He indicates that he used to receive this when he was 16 years of age and that he has seen a psychiatrist for evaluation a few years ago.

**Medical History:** Mr. Otero indicates that his health is good. He indicates that he has had minor head injuries requiring stitches but no loss of consciousness and no evidence of seizures.

**Psychiatric History:** Mr. Otero indicated that he saw a psychiatrist for determination of his disability. He indicates that the psychiatrist was on Highland St. in Worcester but he could not recall his name nor could Ms. Santiago.

Mr. Otero indicates that he has never been hospitalized psychiatrically. He did indicate that he saw counselors from the age of 14 mostly in drug programs. While at MCI-Cedar Junction, he has been on Trazadone (an antidepressant to aid sleep), Celexa (an antidepressant) and occasionally on Klonopin for anxiety/panic attacks. His diagnosis includes a question of Post Traumatic Stress Disorder.

Reportedly, Mr. Otero has a history of suicide attempts.

**Substance Abuse History:** Mr. Otero indicates that he began to use alcohol at the age of 13 or 14 using alcohol that his father was using. He indicates that while he was in school he would drink behind the school. He reports a few occasions in which he has suffered blackouts.

Mr. Otero indicated that he began to use marijuana at the age of 10 or 11. He reports he was introduced to it by an aunt. He would go to her house and she would have marijuana there. He reports that he soon used almost everyday.

He began the use of cocaine at the age of 15 when he put it in cigarettes and began to smoke it. He progressed to crack cocaine at the age of 15. He indicates that at its height, his weight declined to 120 pounds.

Heroin use began at the age of 17 via sniffing. He reports some minor experimentation with hallucinogens. He reports that he also sniffed model glue as a child.

Records indicate that he has from time to time participated in drug treatment programs. The indication in the records from treatment programs is that Mr. Otero's description of his drug usage was consistent with the history he gave me. He reportedly has gone to six detox programs but no residential aftercare programs.

## SUMMARY AND RECOMMENDATIONS

1. Mr. Jose Otero is 34-year-old, Hispanic male who is before the United States District Court of Massachusetts named with an indictment on December 15, 2004 charging Possession of Five or More Grams of Cocaine Base with Intent to Distribute in violation of 21 U.S.C. ~ 841(a) (1). The indictment also contained a forfeiture allegation pursuant to 18 U.S.C. ~ 853 ~ and noted some additional factors indicated that the offense involved at least 35 grams of cocaine base as outlined in U.S.G. ~ 2D1.1(5) and identifying the defendant as a career offender as defined by U.S.G. ~ 4B1.1. There are no co-defendants named in the charges, and Mr. Otero pled guilty on November 10, 2005 to one count of the indictment. In addition to the federal charges, Mr. Otero is charged in the Commonwealth with Possession with Intent to Distribute, Use without Authority and Driving with a Suspended License. Reportedly the Massachusetts State Police Crime Laboratory identified the substances found on Mr. Otero to be 42.97 grams of cocaine together with $1141 in cash in his pocket.

2. Mr. Otero comes from a difficult background – a family with a history substance abuse and severe physical abuse and avoidance of child welfare authorities that took his family to three states. He was eventually taken from his family's care as a teenager and placed in a foster home. The only apparent stability has been his 17 year relationship with Caridad Santiago with whom he has a son.

3. Mr. Otero indicates that he has had a significant history of substance abuse with his drugs of choice being cocaine and heroin. His longest period of sobriety has been 1 ½ years while incarcerated. His history of criminal cases has largely been drug related – either possession cases or cases designed to support his substance abuse. He has been charged on two separate occasions with assault cases but both of these have been dismissed.

4. Mr. Otero has a mental disorder best described as an anxiety based disorder with panic features. There is a some evidence of a Post Traumatic Stress Disorder although a formal assessment has not been made. There certainly is a basis in reality to consider a past traumatic experience (severe physical abuse).

5. It is my understanding that there is a minimum mandatory sentence of 10 years for Mr. Otero with a requirement of supervised release. The 10 year sentence will take Mr. Otero to approximately 43 years of age. The tendency is for there to be a general decline of antisocial acts/behavior past age 40. Clearly the possibility for rehabilitation remains for Mr. Otero and a period of community supervision is recommended with conditions that he refrain from all use of alcohol and other, illegal, substances. The length of his supervision in the community, as I understand it must be at least 8 years. Successfully completing 8 years past his sentenced time will bring him to age 51 and the probability of recidivism will be

significantly reduced. I would hope that his release time would include a period of transition in a community residence or half-way house designed to treat substance abusers.

Respectfully submitted,

*Robert H. Joss, PhD*

Robert H. Joss, Ph.D.
Licensed Psychologist

*Dr. Joss is designated by the Department of Mental Health as a Designated Forensic Psychologist and Forensic Mental Health Supervisor.*

## CERTIFICATE OF SERVICE

I, **EDWARD L. HAYDEN,** Attorney of record for the Defendant **JOSE OTERO,** do hereby certify that I have served the foregoing, **ATTACHMENT TO DEFENDANT'S SENTENCING MEMORANDUM,** by mailing a copy, to Attorney Paul Casey, U.S. Attorney's Office, U.S. District Court, 595 Main Street, Worcester MA and Jennifer Sinclair, Probation Department, U.S. District Court 595 Main Street, Worcester MA, on the 1st day of June 2006.

*Edward L. Hayden*
EDWARD L. HAYDEN