UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA )
)
v. ) NO. 04-40030-FDS
)
JOSE OTERO )

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by Paul G. Casey, Assistant United States Attorney, respectfully submits this Sentencing Memorandum regarding Defendant Jose Otero, currently scheduled to be sentenced on June 29, 2006. For the reasons provided below, the government recommends that the Court impose a Guidelines sentence of 300 months.

**1. BACKGROUND**

On October 7, 2004, officers assigned to the Worcester Police Department’s anti-violent/street crime unit conducted a license plate check on a car driving in the Pleasant Street area of Worcester and learned that the vehicle had been stolen from Enterprise Rental Company. Officers activated their lights and siren and pulled the vehicle over. The driver, Jose Otero, attempted to get out of the vehicle and was detained by one of the officers. The front seat passenger was also detained. The officer asked Otero who owned the car. Otero replied, “I don’t know. Some girl.” Officers then placed both Otero and the

passenger, Ramon Correa, under arrest for using a motor vehicle without authority.

Otero was also cited for driving on a suspended license. During the subsequent search incident to arrest, officers recovered $1,141.00 in cash and a large quantity of crack cocaine from the pants pocket of Otero. Once the crack cocaine was found, Otero stated that he could not go back to jail that he had just gotten out for jail for drug violations. The crack cocaine was taken to the Massachusetts state police crime laboratory where it was weighed and analyzed and determined to be 42.97 grams of cocaine base.

**2. SENTENCING CALCULATION**

**a. Statutory Maximum Sentence**

The government filed an information pursuant to 21 U.S.C. § 851 providing notice that the government will seek an enhanced sentence as a result of Otero's prior drug convictions. Otero was advised of the filing of the information following the Rule 11 hearing and admitted to the prior convictions. As a result, Otero faces a maximum penalty of life imprisonment with a mandatory minimum prison term of ten years. Otero also faces a term of supervised release of eight years to life and a maximum fine of $4,000,000.

**b. Sentencing Guidelines Calculation**

The government agrees with the Guidelines Sentencing Range

(“GSR”) contained in the pre-sentence report (“PSR”).

The government agrees that Otero notified the government in a timely fashion of his intention to accept responsibility and therefore is entitled to a three-level reduction pursuant to §§3E1.1(a) and (b).

**3. GOVERNMENT’S RECOMMENDATION**

The government respectfully recommends that the Court impose a sentence of 300 months of imprisonment. The recommended sentence falls in the middle of the Guideline range and reflects Otero’s extensive criminal history, the nature and circumstances of the offense, the history and characteristics of the defendant, the seriousness of defendant’s offense conduct, the need to promote respect for the law, provide just punishment, afford an adequate deterrence to criminal conduct and protect the public from further crimes by Otero. Such a sentence would be sufficient but not greater than necessary to promote the above stated sentencing goals.

Otero has filed a sentencing memorandum seeking a deviation from the Guidelines to 15 years. Otero argues that as a result of his self-reported undocumented claims of physical abuse and sexual abuse he received as a minor, and his decision to abuse drugs, Otero should receive a non-Guidelines sentence. When reviewing the credible evidence in the record, however, including Otero’s twelve criminal convictions (six for possession with

intent/distribution of illegal drugs), Otero does not provide the court with clearly persuasive reasons or circumstances to justify a sentence below the advisory Guidelines sentencing range.

**a. A Sentence of 300 Months Is a Reasonable Sentence under the Circumstances of this Case.**

Although the Guidelines have become advisory rather than mandatory, determining the correct GSR remains an appropriate starting point for constructing a defendant’s sentence. See United States v. Booker, 543 U.S. 220, 125 S.Ct. 738 (2005); United States v. Jimenez-Beltre, 440 F.3d 514, 518 (1st Cir. 2006) (en banc)(“Notwithstanding the recasting of the guidelines as advisory, they remain ‘an important consideration in sentencing.’”) The GSR, taking applicable departures into account, is the “starting point” for the analysis. United States v. Saez, 444 F.3d 15, 16 (1st Cir. 2006) (citing Jimenez-Beltre, 440 F.3d at 518). “From there, the proponent of a higher or lower sentence may offer reasons and facts to persuade the district court to impose a sentence outside the GSR. See id. The party seeking a nonguidelines sentence, whether the defendant or the government, bears the burden of “providing the basis” to support such a sentence. See Jimenez-Beltre, 440 F.3d at 519; United States v. Rivera, __ F.3d __, 2006 WL 1360933, 2 (1st Cir. 2006). As this Court stated in Jimenez-Beltre:

> Assuming that the district court correctly calculates the guidelines range and its reasoning is express or can be discerned, the remaining question on

> appellate review is one of reasonableness which Booker expressly held to be reviewable. Often, there can be more than one reasonable way of assessing a factor and more than one reasonable result. Assuming a plausible explanation and a defensible overall result, sentencing is the responsibility of the district court.

440 F. 3d at 519; see also United States v. Navedo-Concepcion, __ F.3d __, 2006 WL 1575573 (1st Cir. 2006)("But, in attacking a Guidelines sentence as excessive, a defendant would have to adduce fairly powerful mitigating reasons and persuade us that the district court was unreasonable in balancing the pros and cons despite the latitude implicit in saying that a sentence must be 'reasonable.'").

**1. Defendant's Childhood**

Otero claims that he has had a very difficult upbringing and self-reports that he was physically abused as a child and sexually abused as a young teen by an unidentified person. The burden to establish a basis for a downward deviation lies with the defendant. See Jimenez-Beltre, 440 F.3d at 519; Rivera, 2006 WL 1360933 at 2. Other than Otero's unsworn statements to the Probation Officer and the defendant's own psychologist, there is no evidence that such events happened or were reported to authorities. This defendant has been through the penal system on many occasions over the years and is now facing a heavy sentence. It would not unreasonable to believe that a seasoned defendant may have learned to say things along the way to help his cause, whether true or not. Given that he is a convicted felon multiple

times over, with a strong incentive to fabricate, his claims should be viewed with a jaundiced eye in the absence of corroboration.

Even if the claims of abuse are true, in full or in part, it is the sad but true fact that many defendants have difficult childhoods, and are subjected to physical abuse. It is also true that many individuals with similar backgrounds do not turn to a life of crime and do not turn to selling drugs. There is nothing here that would take the defendant out of the pool of defendants similarly situation who have had difficult childhoods. As the Guidelines note, “lack of guidance as a youth and similar circumstances indicating a disadvantaged upbringing are not relevant grounds in determining whether a departure is warranted.” USSG §5H1.12. It is clear that the Sentencing Commission contemplated in the Guidelines that a defendant’s difficult upbringing is likely inherent the resulting criminal activity to some degree. Although the court now has greater discretion with the advisory nature of the Guidelines, Booker did not throw the baby out with the bath water. It would be inconsistent to justify a more lenient sentence as a result a difficult upbringing with this defendant when the Sentencing Commission, after years of research and study regarding the appropriate sentence and mitigating factors, determined that such a factor was not relevant. There may be circumstances where an

individual defendant's circumstances are proven, egregious, and appropriately tethered to his current criminal conduct, justifying a deviation. Such a circumstance does not exist here.

**2. <u>Defendant's Abuse of Drugs</u>**

Otero's history of abusing drugs does not provide a clearly persuasive reason for mitigation here. This basis has been historically irrelevant under the Guidelines, a fact that should not now simply be ignored. While the court can consider it, it should not give the argument much weight. The PSR indicates a number of opportunities where Otero received repeated opportunities for treatment as part of the many sentences he has received over the years. He has not shown any real effort to battle any drug addiction. By his own admission here, Otero told the police officer that he just got out prison for dealing drugs. Indeed, he had been recently released from serving an eighteen months sentence for drug distribution. The fact that he is unemployed and found in a stolen car with over $1,000 in his pocket shows that he was actively dealing in the Pleasant Street neighborhood of Worcester. There were no crack pipes or other evidence of personal use found. There was no indication Otero was under the influence of drugs. In any event, such arguments for mitigation might be more clearly persuasive if it were Otero's first or second appearance in court on a criminal drug charge and there was clear evidence that the crime was to support

a drug habit. This appearance, however, marks at least Otero's 15th case before a sentencing court, many for dealing drugs, where he is required to explain his conduct, where he now undoubtedly repeats to this court the same past arguments for mitigation and leniency that he has used in other courts.

### 3. <u>Defendant's Mental Health</u>

Otero's last argument for mitigation centers around a psychological report that states: "Mr. Otero has a mental disorder best described as an anxiety based disorder with panic features." It is no wonder that Otero would suffer from anxiety with panic features given the stiff sentence that he is now facing. It does not appear however, that such a disorder would have contributed to his current criminal conduct. Under the Guidelines:

> A downward departure may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense. Similarly, if a departure is warranted under this policy statement, the extent of the departure should reflect the extent to which the reduced mental capacity contributed to the commission of the offense.
>
> However, the court may not depart below the applicable guideline range if (1) the significantly reduced mental capacity was caused by the voluntary use of drugs or other intoxicants; (2) the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence; (3) the defendant's criminal history indicates a need to incarcerate the defendant to protect the public; or (4) the defendant has been convicted of an offense under chapter 71,

109A, 110, or 117, of title 18, United States Code.

USSG §5K2.13. The court has greater latitude since Booker to consider imposing a sentence that deviates downward from the Guidelines. The logic of the Sentencing Commission and the Guidelines remains; where there is no evidence that the defendant's mental, learning or language deficits contributed in any way to the commission of the offense, such claims should be given little weight. Given the large sum of money in his pocket, the unemployed Otero hardly has a leg to stand on in blaming his recidivist drug dealing on some mental or emotional condition. Such a condition did not seem to hamper Otero's ability to sell crack cocaine on the streets of Worcester over and over again. It should not now inure to his benefit after having committed another crime. Whatever psychological issues Otero is now dealing with, they do not create a clearly persuasive reason for leniency.

**4. CONCLUSION**

Otero seeks a sentence of 188 months of imprisonment, an 30% reduction from the bottom of the Guidelines Sentencing Range. "The farther the judge departs from the Guidelines sentence. . . the more compelling the justification based on factors in section 3553(a) that the judge must offer in order to enable the court of appeals to assess the reasonableness of the sentence imposed." United States v. Smith, 445 F.3d 1, 4 (1st Cir. 2006); citing

United States v. Dean, 414 F.3d 725, 729 (7th Cir. 2005). None of the reasons cited by Otero are clearly persuasive or provide a justification to deviate from the Guidelines. Here, a Guidelines sentence of 300 months is reasonable under all of the circumstances. The sentence appropriately accounts for the factors listed in 3553(a), and is not greater than necessary to achieve all of the goals of sentencing.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

/s/ Paul G. Casey
PAUL G. CASEY
Assistant United States Attorney

Date: June 15, 2006.

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Paul G. Casey
PAUL G. CASEY
Assistant United States Attorney